## No. 11,651.

## GRATTAN *v.* WILSON, ET AL.

Decided June 27, 1927. Rehearing denied September 12, 1927.

·Action to cancel promissory notes and for injunction restraining sale of security.   Judgment for plaintiffs.

### *Reversed.*

1.   CHATTEL MORTGAGE—*Sale—Delay.*   Delay in selling chattel mortgaged property taken by replevin, held, under the facts disclosed, not so unreasonable as to amount to a conversion.

2.   REPLEVIN—*Custody of Property.*   Property delivered by the sheriff to a plaintiff in replevin does not cease to be in custody of the law.

3.   *Custody of Property.*   It is the legal duty of a plaintiff in replevin to whom the property has been delivered, to hold it to await the outcome of the action.

4.   INJUNCTION—*Liability of Defendant.*   Defendant in an injunction suit acts at his peril if he does the thing sought to be enjoined.

5.   PLEADING—*Prayer.*   In a replevin action, allegations of defendants' counterclaim, if sustained by the evidence, held sufficient to entitle them to an injunction restraining sale of the property, notwithstanding the absence of a prayer for that specific relief.

6.   EQUITY—*Wrongdoer.*   No one should be permitted to profit by his own wrong.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. BENJAMIN GRIFFITH, for plaintiff in error.

Mr. J. W. KELLEY, Mr. J. D. KELLEY, Mr. LEO J. CROWLEY, Mr. W. R. RAMSEY, for defendants in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendants in error obtained a decree canceling certain promissory notes, and restraining the plaintiff in error from foreclosing a deed of trust given to secure the payment of the notes.

On April 23, 1924, Grattan sold to the Wilsons the furniture and other personal property in the Carlton Hotel, in Denver, together with a lease of the premises. No cash was paid to Grattan; but the Wilsons assumed an indebtedness of Grattan's, secured by a chattel mortgage of the property, and gave their promissory notes, payable monthly, for the balance, and secured them by a second chattel mortgage. Five of the notes—those involved in this suit—were also secured by a trust deed of certain lots owned by the plaintiff Pearl Wilson. Default having been made in the payment of some of the notes, Grattan, acting in pursuance of the terms of the chattel mortgage given by the Wilsons, demanded possession of the mortgaged property for the purpose of foreclosure sale. The Wilsons refused to surrender possession, whereupon Grattan brought a replevin action, and the mortgaged property was taken by the sheriff by virtue of the replevin writ. No redelivery bond being given by the Wilsons, the sheriff, on September 29, 1924, delivered the property to Grattan, as required by law. The Wilsons filed an answer in the replevin action. In it they denied that Grattan was entitled to the possession of the property, and denied that they were wrongfully detaining the property from him. By way of cross-complaint, the Wilsons alleged that Grattan made false representations concerning the property, and that they were thereby induced to purchase the same and to execute and deliver the notes, the chattel mortgage, and the trust deed; that upon their threatening to rescind the contract, Grattan, in consideration of their agreeing not to rescind, promised to extend the time of payment of the monthly installments, and to lessen the several amounts thereof; and that it was agreed by the parties that new notes and a new chattel mortgage should be substituted for those

then in existence. They also alleged that Grattan refused to carry out this agreement; that, in violation thereof, he took possession of the property, and is operating the same at a profit sufficiently large to pay the monthly installments due under the new agreement, "and now proposes to sell the same," as well as the real estate covered by the deed of trust, to satisfy the indebtedness; that the Wilsons verily believe that he will do so unless restrained by order of court; and that by reason of these matters, they have been and will be damaged "at the time of the trial" in the sum of $10,000. They prayed that the property be returned to them; that $10,000 damages be awarded them; that if the property cannot be returned, they may have judgment for $20,000, the value thereof, together with $10,000 damages; that the new agreement be specifically performed; that the profits derived by Grattan from the business be accounted for; that Grattan be restrained from disposing of the "securities" until the endorsement thereon of credits to conform to the new agreement, or until new notes be substituted as provided in such agreement. They also prayed for "general equitable relief." The replication consisted of denials, and a plea that the so-called new agreement was not in writing, as required by the statute of frauds. The jury in the replevin action found the issues in favor of Grattan, and found specially that he was entitled to the possession of the property. Judgment was entered on the verdict. Promptly upon the rendition of the verdict, Grattan proceeded to advertise the property for sale, and, on July 7, 1925, he sold it in compliance with the provisions of the chattel mortgage. The proceeds satisfied all the promissory notes, except the five notes secured by the deed of trust. Grattan applied to the public trustee to sell the property described in the deed of trust, to satisfy the unpaid indebtedness evidenced by the five notes given by the plaintiffs; whereupon the plaintiffs brought this suit, which resulted in a judgment in their favor.

To sustain the judgment, their counsel rely upon the following statement of the law in 11 C. J. p. 590: "A mortgagee is liable for a conversion where he takes possession under the mortgage and refuses to sell in accordance with its terms, or delays for an unreasonable time after default, and he is liable to the mortgagor for the difference between the value of the property and the amount of the mortgage debt."

Counsel argue here, as they argued in the court below, that it was the duty of Grattan to sell the property within a reasonable time after obtaining possession, and that the delay from September 29, 1924, to July 7, 1925, was an unreasonable delay, and amounted to a conversion. The trial court adopted this view; found that the reasonable value of the property on September 29, 1924, was equal to the mortgage debt; decreed the cancellation of the five notes; and enjoined Grattan from attempting to foreclose the deed of trust.

We cannot affirm the judgment. Passing for the present the question raised by counsel for Grattan, whether, under the decisions of this court, a mortgagor may maintain trover against a mortgagee in possession after condition broken (*First National Bank v. Wilbur,* 16 Colo. 316, 26 Pac. 777; *Hurt v. Hubbard,* 41 Colo. 505, 92 Pac. 908; *Sorrells v. Sigel-Campion Co.* 27 Colo. App. 154, 148 Pac. 279), the facts do not justify the finding that there was unreasonable delay in the sale of the mortgaged property. Whether or not there has been an unreasonable delay depends upon the circumstances. · If the Wilsons had complied with Grattan's demand, and had permitted him to take possession of the property, the case, under the authorities relied upon by counsel for the Wilsons and cited in 11 C. J. p. 590, would be one of unreasonable delay. But the Wilsons not only did not permit Gratton to take possession, but they interposed every obstacle to his doing so. They compelled him to bring a replevin action to obtain possession. They filed an answer denying his right to possession and his right

to sell. They filed a counterclaim demanding a return of the property and damages for its detention. They sought an injunction. Our Code (§ 87) provides that the replevin bond, which Grattan was obliged to file before he could obtain the replevin writ, shall be conditioned "for the return of the property to the defendant, if return thereof be adjudged." In *Western Finance and Dev. Co. v. Fisher,* 72 Colo. 121, 210 Pac. 66, we held that by the terms of the bond it is the duty of the plaintiff in replevin, to whom the property has been delivered, to retain possession until final determination of the action, so that the property may be turned over to the one adjudged to be entitled to the possession; and that if he voluntarily parts with the possession before that, he violates his bond. Upon its delivery by the sheriff to the plaintiff in replevin, the property does not cease to be in custody of the law. Cobbey on Replevin (2d Ed.) § 706; *Mohr v. Langan,* 162 Mo. 474, 63 S. W. 409, 85 Am. St. Rep. 503. See also *Hagan v. Lucas,* 10 Peters (U. S.), 400, 9 L. Ed. 470. In delaying the sale, and in holding the property to await the outcome of the replevin action, Grattan was performing his legal duty.

If, in the replevin action, the court had enjoined Grattan from selling the property, it is conceded that the delay in selling would not have been unreasonable, and could not be held to be a conversion. *Ziegler v. Vollers,* 59 Okl. 74, 157 Pac. 1035. Even where an injunction has not been issued, if the suit is one for an injunction, the defendant, if he does the thing sought to be enjoined, does so at his peril. *Thornton v. Schobe,* 79 Colo. 25, 243 Pac. 617. It is claimed that in the replevin action the Wilsons' counterclaim contained no prayer for an injunction restraining Grattan from selling the property, but merely one restraining him from disposing of the "securities," meaning the promissory notes. But the counterclaim alleged a violation by Grattan of the so-called new agreement, and that he "now proposes to sell the same [i. e., the chattel mortgaged property], in

satisfaction of the indebtedness represented by the notes * * *, as well as the real property herein described, and defendants verily believe that he will do so *unless restrained by order* of this honorable court." This, together with the other allegations in the counterclaim, if sustained by evidence, would have entitled the Wilsons to an injunction restraining Grattan from selling the chattel mortgaged property, notwithstanding the absence of a prayer for that specific relief. Code, § 187. There was a prayer "for general equitable relief," but that was not necessary. The purpose sought to be accomplished by the counterclaim was to prevent Grattan from availing himself of the notes, or of the chattel mortgage, or of the trust deed while the replevin action was pending, and to prevent a foreclosure sale. The Wilsons now contend that it was Grattan's legal duty to do, and to do sooner, the very thing that they then contended he had no legal right to do at all. No one should be permitted to profit by his own wrong. By their wrongful obstruction of Grattan in his effort to exercise his legal rights, the Wilsons were responsible for the delay of which they now complain, and for which the judgment, if sustained, would penalize Grattan.

The judgment is reversed, and the case is remanded, with directions to dissolve the injunction and dismiss the complaint.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.