## General Motors Acceptance Corporation v. Burns

*J. Douglas M. Royal* and *Addison M. Bowman, Jr.,* for plaintiff.

*Irwin Albert,* for defendant.

SHUGHART, P. J., April 17, 1961.—We have before us for consideration the petition of plaintiff to set aside a sale of an automobile which is the subject matter of this action in replevin and to strike off the counterbond filed by defendant. After an answer was filed to plaintiff's petition, certain factual matters involved in the action were submitted by stipulation.

From the stipulation, it appears that sometime prior to July 15, 1960, defendant, the operator of a garage, received possession of a 1956 Oldsmobile Convertible from one John P. Olivia for the purpose of repairing the same. Olivia had purchased the vehicle in October 1959 under a conditional sale contract, which contract was subsequently assigned by the conditional vendor to plaintiff, General Motors Acceptance Corporation. The repairs to the vehicle were made and thereafter on or about July 15, 1960, Olivia and plaintiff were notified by registered mail that defendant claimed a lien on the automobile by virtue of the repairs made and parts furnished by him, and further notified them that if the unpaid bill was not paid, the automobile would be sold at public sale on August 31, 1960. Thereafter, on or about August 5 and 12, 1960, defendant gave public notice, through advertisement in a local newspaper, that the vehicle would be sold at his premises to satisfy the lien.

On August 29, 1960, plaintiff instituted the present action in replevin with bond. On August 31, 1960, at 10 a.m., the sheriff served a writ of replevin upon defendant, but permitted the vehicle to remain in the possession of defendant "without prior authorization from the Plaintiff or subsequent ratification and approval of such action." Later on the same day, defendant exposed the motor vehicle to sale as advertised and purchased the same for $1. Thereafter, defendant filed a counterbond in replevin and continued and still continues to hold possession of the said vehicle.

"The Rules of Civil Procedure provide that where a writ of replevin is issued, the defendant may retain possession of the property by filing a counterbond. This provision does not apply to one claiming possession of the property by virtue of a lien only. R. C. P. 1076. The reason for this provision is that the possessor of property, who claims a lien only, has full protection of his rights by virtue of the bond which the plaintiff is required to file, by requesting that a conditional verdict be entered. Wenzel v. Reed, 161 Pa. Superior Ct. 488, 489; R. C. P. 1082(c); Goodrich-Amram 1082(c)-1": Ballerstadt v. Weibley, 11 Cumberland 131, 132.

The question presented here is whether a lienholder may make sale to himself of the subject matter of the action after the writ of replevin has been served upon him and thereby change his status from that of lienholder to owner and then retain possession by filing a counterbond. In order to answer this question, it is necessary to determine the effect of the action taken by the sheriff in this case.

The return of the sheriff filed on September 28, 1960, is, in part, as follows:

"Robert L. Adams, Deputy Sheriff who being sworn according to Law, says he Replevied as within Commanded the within described goods and Summoned,

Morris Burns and John P. Olivia, Defendants by handing to and leaving with Morris Burns two true and attested copies of the same. . . ."

Counsel for defendant contends that, since the sheriff did not actually take possession of the goods and was not authorized to leave the property in defendant's possession, the replevin action lost its "in rem" characteristics and became converted into an action "in personam." He contends, therefore, that the action of the sheriff was insufficient to enjoin the subsequent sale to satisfy defendant's lien. In support of this proposition, defendant cites Goodrich-Amram, §1074-(e)-1. The foregoing is obviously the situation where the sheriff fails to "find and seize" the goods as stated in the comment. This result does not follow where the sheriff has found the goods but has simply failed to take full possession thereof.

In the case of Mayer v. Chelten Avenue Building Corporation, 321 Pa. 193, a landlord seized the tenant's goods in execution for defaulted rental payments of an apartment. The tenant secured a writ of replevin and, on the filing of the bond, the goods were released from the lien of the execution, but the sheriff permitted the goods to remain on the premises. After the writ was returned, the goods were removed by a deputy sheriff to a public warehouse. The tenant then brought an action against the landlord, charging an unlawful eviction and violation of her right to have the property remain on the premises. At the trial of the case, the tenant could not prove the right to remain in possession of the premises and was forced to try her action as one of forcible entry and detainer. Mr. Chief Justice Kephart said, at page 196:

". . . The landlord, having the right to reenter and repossess premises for default in rents by the terms of the lease, had implied authority to remove furniture or other property from the demised premises and

place it in storage or elsewhere at the owner's risk. Of course, no more force than is necessary can be used and due care must be observed.

"The goods were removed to a public warehouse by a deputy sheriff acting under the direction of the sheriff's solicitor. When the writ of replevin was executed by the sheriff the goods were left in the possession of the tenant. Ordinarily when the writ is returned it has spent its force and can no longer be acted on. *But, if the sheriff, in the execution of a writ of replevin, permits the goods to remain on the premises or leaves them where they cannot be secured by the owner, the sheriff has not made a complete execution of the writ.* He may thereafter take further steps to deliver the goods into the plaintiff's possession, a bond being posted and no counterbond filed by the defendant. *Until proper execution of the writ the goods are in the custody of the sheriff:* First Nat. Bank v. Dunn, 97 N. Y. 149; Grattan v. Wilson, 82 Colo. 239 (259 Pac. 6) ; Mohr v. Langan, 162 Mo. 474 (63 S.W. 409) ; Wilson Motor Co. v. Dunn, 129 Okla. 211 (264 Pac. 194)." (Italics and citations in parenthesis supplied.)

It has been held that property in the custody of the law is not subject to attachment. "Property in the hands of the sheriff on an execution writ remains *in custodia legis* until the final step is taken and the property is delivered to the judgment creditor. As long as the property is *in custodia legis*, it cannot be attached": Weicht v. Automobile Banking Corporation, 158 Pa. Superior Ct. 430, 432.

In this case, it was held that, while an automobile was being held by the sheriff under a writ of de retorno habendo for return to plaintiff in a replevin action, the property cannot be seized on a writ of foreign attachment.

In the case of Skiles v. Sides, 1 Pa. Superior Ct. 15, a deputy sheriff attempted to execute a writ of replevin

against one Amos, who occupied apartments leased from Skiles and on which there was $300 in accrued rentals due. The goods to be replevied consisted of some 250 articles of equipment which were held on the premises by Amos as bailee of plaintiff in the replevin action. These goods were intermingled with other goods belonging to Amos. It was conceded that the deputy sheriff promptly and legally seized the goods under the writ. After the seizure, Amos attempted to get sureties on a counterbond. During the interval, Skiles was advised of the replevin action. As soon as the deputy was advised that no counterbond could be given by Amos, he begain delivering the goods to one of plaintiffs who was present to identify and receive the items. This work had just commenced when Skiles, with his attorney and a constable appeared on the scene with a landlord's warrant and proceeded to distrain the goods by virtue of the warrant. Following a controversy, the deputy sheriff and his party were locked out of the rooms by the landlord and his party. These events occurred on a Friday, and the deputy promptly reported them to the sheriff. The sheriff on the following Monday went to the Amos property and secured admittance. He proceeded thereafter to execute the writ by delivering the goods to plaintiffs. For this action, the sheriff was sued by the landlord in trespass, the landlord being the plaintiff in the suit and the sheriff the defendant. Plaintiff-landlord contended that the jury should have been instructed, in substance, that the goods found on the premises were subject to distress for rent despite the fact that a writ of replevin for the recovery of the goods had been issued against the tenant and was in the hands of the sheriff. In this connection, the court said, at page 18:

"If the point, as is probable, was intended to mean that property, although taken into the officer's custody, was liable to distress in every case where it was

permitted to remain on the leased premises, it should have been refused for even a stronger reason. The answer of the court was, in substance, that if the goods were still in the possession of the sheriff when the plaintiff distrained, they were in the custody of the law, and therefore not liable. This was a proper way of disposing of the point.

"What is meant by the expression, in custodia legis? 'Property lawfully taken, by virtue of legal process, is in the custody of the law:' Anderson's Dict. Law, 302.

"In Pierce v. Scott, 4 W. & S. 344, the question being whether property seized, by virtue of a writ of foreign attachment, was distrainable for rent, GIBSON, C. J., says: 'It is a rule without an exception, that a landlord cannot distrain goods which are in the custody of the law.' In Com. v. Lelar, 1 Phila. 173, Judge SHARSWOOD, whose opinion, whether uttered in nisi prius or as a justice of the Supreme Court, is entitled to very high respect, says: 'It is true that if the sheriff leaves the goods on the premises, there will be liability, but, as he is required by law not to take the actual possession out of the hands of the defendant until a reasonable time is allowed for the purpose of obtaining security on a property bond, during said period the goods are to be considered as in the custody of the law, and no more liable for rent than if the sheriff had actually removed them, and no one pretends that a landlord has the right to follow the goods of a stranger. It would turn the privilege which the law gives the defendant into a weapon of offense and instrument of fraud, if, to defeat a plaintiff, whose goods he wrongfully holds, he could invoke his landlord and have them applied to the payment of his rent, while the plaintiff was in the diligent pursuit of the remedy given him by law.' "

A consideration of the cases above cited makes it

clear that where the sheriff in the execution of a writ of replevin permits property to remain on the premises or in the possession of defendant, such goods are still in custodia legis and are not subject to distress for rent or any other action that would defeat the replevin proceedings. If such action by the sheriff is sufficient to prevent acts by third persons against the goods a fortiori, such action by the sheriff would prevent further acts against the property by defendant himself. Therefore, in this case, defendant had no authority to proceed with the sale to satisfy his lien, and the sale must be set aside. Since the sale was a nullity, the status of defendant is that of a lienholder only and, under the authorities cited at the beginning of this opinion, he has no standing to file a counterbond and the counterbond previously filed must be stricken.

The result is supported by justice and equity. In the event that defendant is entitled to be paid for his repairs, parts and storage on the vehicle, he is secured by the bond which plaintiff was required to file through the use of a conditional verdict. If he is not so entitled, then he should not prevail simply because he made sale of the property within a few hours after the sheriff served the writ of replevin on him. This conclusion is also supported by the "good faith" provision of the Uniform Commercial Code.

Our decision in this matter relates to the procedure only. We have neither discussed nor decided the substantive rights of the plaintiff securityholder under the conditional sales contract and the defendant lienholder.

### Order of Court

And now, April 17, 1961, at 1 o'clock p.m., for the reasons given, the rule to show cause why the sale on the repairman's lien should not be set aside and defendant's counterbond stricken is made absolute, and the sale is set aside and defendant's counterbond stricken from the record.